83   612
105   194
83   612
p110   599
83   612
123   586

AMERICAN EMIGRANT COMPANY, Appellee, v. ROGERS LOCOMOTIVE MACHINE WORKS *et al.*, Appellants.

Swamp Land Act of 1850: WHAT LANDS INCLUDED: CONSTRUCTION OF STATUTE. The swamp-land act of congress of 1850, conveying to certain states "the whole of those swamp and overflowed lands made unfit thereby for cultivation" within the borders of said states, and

providing that the same should include "all legal subdivisions, the greater part of which is wet and unfit for cultivation," was intended to cover all subdivisions of land, the greater part of which is not arable. The fact that land is capable of being seeded to such grasses as timothy or red top, and mowed year after year, and crops of grass be thereby secured, will not exclude it from the operation of the act.

*Appeal from Calhoun District Court.*—Hon. J. H. Macomber, Judge.

Thursday, October 22, 1891.

Action in equity to quiet the title to certain land situated in Calhoun county. On final hearing the district court granted to the plaintiff the relief demanded as to a portion of the land. The defendants appeal. *Affirmed.*

*Chas. A. Clark*, for appellants.

*Seevers & Seevers* and *J. J. Davis*, for appellee.

Robinson, J.—This action was brought to quiet the title to certain tracts of land claimed by the plaintiff under the swamp-land grant, made by the act of congress approved September 28, 1850. The defendants claim title under the act of congress approved May 15, 1856, which granted land to the state of Iowa to aid in the construction of a railway from Dubuque to Sioux City. Of the land in controversy, the district court found and adjudged that two lots and fifteen forty-acre tracts belonged to the plaintiff, and that thirty-one such tracts belonged to the defendants.

I. The chains of title under which the respective claims of the parties are made are the same as those considered in the case of *American Emigrant Co. v. Fuller, ante,* p. 599. Numerous legal questions are presented in this case which were determined in that, and it is only necessary to say that as to such questions our rulings in that case are followed in this.

Questions have been presented in regard to the sufficiency of the abstracts and of the certificate of the judge of the district court to identify and preserve the evidence which was introduced, and also that which was offered, in the case. The appellants have filed an amendment to their abstract, which is not denied, and which shows that by appropriate proceedings in the district court the certificate of the judge has been amended to meet the objection made by the appellee. A stipulation to the effect that the judge had certified and duly made of record all the evidence offered or introduced in the case had been made and filed. We do not understand that the appellee is now insisting upon its objections. However that may be, we are of the opinion that they were not well founded, upon the record submitted to us. The alleged defects in the certificate were cured by the *nunc pro tunc* order of the district court. The appellant has filed in this court transcripts and the original evidence, duly certified, and the case is in condition to be considered on its merits.

II. We are required to determine the character of each of the seventeen tracts of land which were adjudged by the district court to belong to the plaintiff. The defendants have offered no evidence with respect to six of them, and admit that they are swamp land, within the meaning of the swamp-land act of 1850. The evidence shows without serious conflict that six of the remainder are of the same character. The controversy as to five of the tracts is more serious, but a careful consideration of the evidence leads us to conclude that they must also be classed with the others. The grant included "the whole of those swamp and overflowed lands, made unfit thereby for cultivation," which remained unsold at the passage of the act within the states to which it applied. The third section of the act provided that the tests to be made of such land

should include "all legal subdivisions the greater part of which is wet and unfit for cultivation. Each of such subdivisions was to be classed as swamp and overflowed land, within the meaning of the act. The test thus made was not whether the greater part of any subdivision was in fact overflowed land, but whether it was so wet as to be unfit for cultivation. It might be of that character, although never overflowed, and land might be sometimes overflowed without being of a swampy character. The question necessarily arises, what kind of cultivation was contemplated by the act? A considerable part of the evidence on the part of the defendant was given on the theory, that, if the greater part of any subdivision could be seeded to such grasses as timothy or red top, and mowed year after year, and crops of grass be thereby secured, it was not so wet as to be unfit for cultivation, and, therefore, was not swamp land. But by the cultivation of land is ordinarily understood something more than the gathering of crops which grow spontaneously, or with little care. Land which can be cultivated, within the meaning of the act, is arable land,—that which is adapted to the raising of crops which require annual planting and tillage, as corn, wheat, oats, rye and barley in this country, and which is susceptible of such cultivation in all ordinary seasons. It is proper to observe in this connection that the conclusion we have reached is in harmony with the rules observed by the general government in administering the swamp-land grant. 1 Lester on Land Laws, 543, 547; *In re Poweshiek Co.*, 9 Decisions of Department of Interior, 124 (relating to public lands). See, also, *Thompson v. Thornton*, 50 Cal. 144; *Keeran v. Allen*, 33 Cal. 547; *Keeran v. Griffith*, 31 Cal. 465.

Applying the rules stated to the evidence in this case, we find without difficulty that all the tracts of land in controversy are swamp and overflowed lands,

within the meaning of the swamp-land act of 1850. The judgment of the district court is, therefore, AFFIRMED.