**Joe FERGUSON et al., Appellants,**

v.

**Matilda M. NEWTON, Appellee.**

**No. 11316.**

Court of Civil Appeals of Texas.

Austin.

June 16, 1965.

Rehearing Denied July 7, 1965.

Dave O. Fretz, John F. Buchanan, Houston, for appellants.

Charles C. Smith, Jr., Cameron, for appellee.

ARCHER, Chief Justice.

This suit originated as a partition suit filed by appellants against W. R. Newton in the District Court of Milam County, seeking division in kind of 470 acres of land there situated.

The suit was filed as against W. R. Newton on the 16th day of October, 1963. On March 31, 1964, appellants amended their petition to include Matilda M. Newton as a defendant, and she was duly served with citation on April 1, 1964. Subsequently Mrs. Newton filed an answer incorporating a denial of the ownership of any interest in the property described in appellants' amended petition, with the reservation that if any of the property described in such petition was embraced in the field notes set forth in her Cross-Action such embraced portion would not be subject to partition because neither appellants nor W. R. Newton had an interest therein.

By her Cross-Action appellee asserted title to 24.03 acres of land under the Ten-year Statute of Limitation.

Pursuant to setting by the court, at appellants' instance and request, the case was called for trial on September 14, 1964. Appellants in open court insisted that the matter of the Cross-Action should be disposed of before determination of the partition suit, and agreed in open court to waive

citation upon appellee's Cross-Action, and agreed, not only with counsel but with the court, that the court might proceed to hear such Cross-Action. Appellants, as well as their counsel, were present in open court during these proceedings.

The defendant, W. R. Newton, was present in person and by counsel during these proceedings.

After the appellants, through their counsel, had entered their appearance, by dictating an answer, consisting of a general denial and a plea of not guilty, the case was presented.

The case was tried before the court without a jury and judgment was rendered for the appellee.

The points of error upon which this appeal is based are directed to the error of the court in the findings of fact and conclusions of law because such were not substantiated by the evidence, and the casual grazing and sowing of grass does not constitute grounds of adverse possession against record title holder, possession was not fair and open, the declarations of an agent are not competent to establish the fact or scope of agents' authority, the placing of the land in the Soil Bank Erosion Program does not constitute adverse possession and the burden of proof rests upon the claimant to establish that the record owner had notice of adverse claim to the land.

Appellants assert that since no improvements, except fences, were erected on the surface, crossplaintiff relied on casual grazing and sowing of grass and such usage did not constitute adverse possession against the record title holder.

Article 5510, Vernon's Ann.Civ.St., sets out the conditions and requirements of the ten limitations for the recovery of land, and Article 5515 requires adverse possession to be actual, visible and hostile to the claims of another, and the usage thereof.

The testimony was given by Dr. Newton, a son of appellee, who stated that his mother was 80 years of age; that his father Dr. W. R. Newton, Sr., purchased the land consisting of about 1200 acres in the early thirties. The witness testified that he was familiar with the land; that his father died in 1938 intestate, and left as his heirs his widow and a number of children all of whom conveyed their interests to their mother, Mrs. Matilda M. Newton; that he was familiar with the fences and had replaced or improved the fences over the years; that the last fencing was done in the early fifties, and was sufficient of turning cattle, etc., and at all times looking after his mother's interest; that there were soil improvements, some grain planted, and some truck farming; that the fences were crooked in places; that he had never heard of anyone claiming any part or interest in the land.

On cross-examination Dr. Newton testified that he acted as an agent for his mother in putting up fences, and testified to meeting Joe Ferguson, Shorty Ferguson and Lloyd Ferguson in 1953, and of a conversation as to the fence lines on the north part of the land, and located some old posts and barbwire, and that Joe Ferguson said: "put the fence right back where it is" and that the fence was put up where it had been.

The witness described the 24 acre tract as being rolling and crossed by ditches; that Joe and Lloyd made a statement that this was the old line of their land.

Chalmers Terry testified that he was employed by the Soil Conservation Service and was generally familiar with the Dr. Newton land and located the 24 acre tract as being on the line of a 113-acre tract, described in deed from C. M. Beard et ux to W. R. Newton dated March 25, 1930, and recited the field notes thereof, which are set out in the deed and identified the exhibits and helped to survey the Newton land, and saw the fences consisting of three o· four strands of barbwire.

Odie Sapp testified that he was familiar with the land in general and lived on the land for a few years from 1951 until 1956 in a house situated next to the highway, farming, working on fences and with cattle, and fixed a fence, replacing an old fence all rusted down and practically no fence at all along close to the Old Lake. The witness stated that he farmed some on the Newton estate and planted some grain on the area south of the lake, and several kinds of grasses; the land was crossed by gullies and that he never heard of anyone claiming any interest in the Newton estate.

On cross-examination the witness said that Mrs. Newton never came out to the place and told them anything, but that Dr. Newton told them what to do.

Lloyd Ferguson testified that he was well acquainted with the 470 acre tract, looked after it and paid the taxes since his father died in 1943, and leased the land for pasture, deducted the taxes from the lease money and divided the rest with the heirs and Dr. Newton. The witness testified that he saw the land where the 24 acres is located and described it as gullies and woods with a little open land that could be cultivated; that Dr. Newton told the witness about a year prior to the suit that Mrs. Newton was holding the land adversely to him and Joe and Jack Oakes.

 We have carefully considered all of the evidence and conclude that appellee did not offer any evidence of proof to establish a claim under the 10-year statute of limitation.

The court made findings of fact and conclusions of law in support of the judgment but we do not believe such were substantiated under the evidence and usage of the land under the law.

We do not attach importance to deeds from the children of Mrs. Newton conveying their interest in the estate of their father to their mother, since all of such deeds are dated within three years of the time of trial.

Dr. W. R. Newton, Jr., testified as to his mother's possession and usage and that any fencing, planting or grazing was under his supervision and the work was done by his employees.

 Dr. Newton was at all times a cotenant with the Fergusons and under no circumstance could he adversely claim this property against his cotenant either for himself or as agent for anyone else without notice to his cotenant.

Article 5510, V.A.C.S., sets out the requirements of adverse possession, and appellee did not meet this requirement. Vol. 2, Tex.Jur., 2nd Series, Art. 107, page 213; Richey v. Miller, 142 Tex. 274, 177 S.W.2d 255, 170 A.L.R. 832; Odem v. Leahy, Tex. Civ.App., 264 S.W. 218, er. ref.

The judgment of the trial court is reversed and judgment here rendered that appellees take nothing.

Reversed and rendered.